UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: JOHN DAVID NEWCHURCH | CASE NO: 05-11747 |
| DEBTOR | CHAPTER 7 |
| JOHN DAVID NEWCHURCH | |
| PLAINTIFF | ADV. NO: 06-1009 |
| VERSUS | |
| SLM CORPORATION, a/k/a, d/b/a SALLIE MAE | |
| DEFENDANT | |

MEMORANDUM OPINION

Debtor John David Newchurch sued SLM Corporation for a declaration that his student loan debt is dischargeable on the basis of undue hardship.[1]  Educational Credit Management Corporation ("ECMC"), which now holds the notes Newchurch signed, intervened and defended the lawsuit.  The parties stipulated that the obligations were incurred for educational loans made, insured or guaranteed by a governmental unit, or made under a program funded in whole or in part by a governmental unit or non-profit institution.[2]

FACTS

John Newchurch borrowed to fund his education at Louisiana State University from 1991 to 2000.  He consolidated his student loan obligations into a single loan in 2001, which with accrued interest had a balance of $116,163.63 as of the trial date.

---

[1]  11 U.S.C. §523(a)(8).

[2]  *Id.*

The debtor contends that his student loans should be discharged because he is unable to find more lucrative employment as a result of his felony conviction. Specifically, the debtor pled guilty in 1987 to federal conspiracy charges stemming from his role in burning a Baton Rouge abortion clinic in 1985. Newchurch attended LSU after serving his sentence. The debtor eventually earned a bachelor's degree in vocational educational technology in 1995, and a master's degree in natural sciences in 2000. While he attended undergraduate and graduate school full time, Newchurch supported himself (and eventually his wife and young daughter) by working part-time as an arborist, a trade he learned in the early 1990's.

Newchurch had hoped to take advantage of programs cancelling part of his student loan debt in exchange for teaching school in a low income community.[3] However, after the debtor completed his undergraduate education, the Louisiana State Board of Elementary and Secondary Education ("BESE") refused to issue him a teaching certificate. A Louisiana state appellate court eventually upheld its decision.[4]

Since the time his plans for a teaching career unraveled, Newchurch has made a modest living as a self-employed arborist, though he supplements his living with firewood sales. The debtor's annual household income has varied, ranging from a low of $14,181 in 2003, to a high of $26,307 in 2005.[5] Newchurch attributed his relatively higher 2005 income to increased demand for his services as a result of damage trees

---

[3] See, e.g., cancellation provisions on promissory notes admitted into evidence as Joint Exhibits 8, 9, 10 and 11.

[4] *Newchurch v. Louisiana State Board of Elementary and Secondary Education*, 713 So.2d 1269 (La. App. 1st Cir.), *writ denied*, 728 So.2d 385 (La. 1998).

[5] These numbers are *adjusted gross income* totals from debtor's tax returns (Joint Exhibits 2 – 6). The debtor's statement of financial affairs shows the debtor's *gross* income as $30,000 in 2003 and $40,000 in 2004. (Joint Exhibit 1).

2

sustained during Hurricane Katrina. The debtor's household has no other source of income.

Newchurch testified that his wife lacks a high school diploma, and is unable to hold a job due to "mental difficulties" stemming from her premature birth. However, the debtor offered no corroborating expert or other evidence concerning his wife's condition.[6] In any case, Mrs. Newchurch has never worked outside the home.

Newchurch has a single vehicle, the 1979 Chevrolet pick-up truck he uses for work. He does not have medical insurance, though according to his testimony his family's annual medical expenses usually total at most a few thousand dollars. He home schools his nine year old daughter.

Newchurch has never worked for anyone but himself, and in fact has not sought work other than as an arborist since before he started college in the early 1990's.

## LAW AND ANALYSIS

Bankruptcy Code section 523(a)(8) excepts from discharge a debt:

> for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

In *Matter of Gerhardt*[7], the Fifth Circuit adopted the three part test for determining entitlement to an undue hardship discharge set forth by the Second Circuit in

---

[6] The debtor in fact did not know whether a physician ever had formally diagnosed Mrs. Newchurch as having a mental condition, and admitted that at the time of trial she was not in the care of a physician or social worker.

[7] 348 F.3d 89 (5th Cir. 2003).

3

*Brunner v. New York State Higher Education Services Corp.*[8]  Under *Brunner,* the debtor must prove that:

> 1)   based on current income and expenses, the debtor cannot maintain a "minimal" standard of living for himself and his dependents if forced to repay the loans;
>
> 2)   additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> 3)   the debtor has made good faith efforts to repay the loans.[9]

The debtor bears the burden of proving all three elements by a preponderance of the evidence.[10]  If the debtor fails to prove even one of these, the inquiry ends and the student loan cannot be discharged.[11]

**I.   THE DEBTOR DID NOT PROVE THAT REPAYMENT WOULD LEAVE HIM UNABLE TO MAINTAIN A MINIMAL STANDARD OF LIVING FOR HIMSELF AND HIS FAMILY.**

Under the first aspect of the *Brunner* test, the debtor must prove that he cannot maintain a minimal standard of living for himself and dependents if he is forced to repay the student loan.[12]  The analysis of the minimum standard of living has two components:

> 1)   The evaluation of the debtor's present standard of living based upon the debtor's lifestyle attributes which appear from the record; and
>
> 2)   Whether the forced repayment of the student loan obligation will preclude the debtor from maintaining a minimal standard of living.[13]

---

[8]   831 F.2d 395, 396 (2ᵈ Cir. 1987).

[9]   *Gerhardt*, 348 F.3d at 91

[10]   *In re McMullin*, 316 B.R. 70, 74 (Bankr. E.D. La. 2004), citing *Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3ᵈ Cir. 1995)

[11]   *Id.*

[12]   *Gerhardt*, 348 F.3d at 92; *Brunner*, 831 F.2d at 396.

[13]   *In re Naranjo*, 261 B.R. 248, 254-255 (Bankr. E.D. Cal. 2001).

4

Debtors cannot satisfy this test "merely because repayment of [the student loans] would require some major personal or financial sacrifices."[14] *Gerhardt* demands more than a showing of tight finances: it requires that a debtor prove he cannot afford reasonably necessary living expenses if he is forced to repay his student loans.[15] A reasonably necessary living expense for purpose of the analysis is one that the debtor cannot cut from his budget while maintaining a minimal standard of living.[16]

The Newchurch family seems to live on a tight budget,[17] with a single exception. Despite his modest household income, Newchurch pays $500 every month on a New York Life Insurance annuity he bought about four years before the trial. The debtor testified that he had initially paid $250 per month for the annuity, but increased his payments to $500 a month at some point and has been paying this amount "for a couple of years." According to the debtor, the annuity will pay a $500,000 death benefit to his survivors, or yield an income of between $15,000 and $20,000 each year if he lives to be sixty-five.

Newchurch's diversion of $500 each month to his annuity,[18] instead of paying his student loans, is an expenditure that could be sacrificed without affecting the family's

---

[14] *In re Elmore*, 230 B.R. 22, 26 (Bankr. D. Conn. 1999), citing *Faish*, 72 F.3d at 306.

[15] *In re Salyer*, 348 B.R. 66, 71 (Bankr. M.D. La. 2006).

[16] *In re Savage*, 311 B.R. 835, 841 (1st Cir. B.A.P. 2004), citing *In re Dolan,* 256 B.R. 230, 239 (Bankr. D. Mass. 2000).

[17] It is doubtful that the debtor's lifestyle is as frugal as the debtor invites the court to conclude, since the debtor incurred tens of thousands of dollars in credit card debt before he filed bankruptcy, according to his listing of unsecured nonpriority debts on schedule F (included in Joint Exhibit 1). The record also suggests that debtor (and later his family) lived primarily on student loan proceeds throughout the years he was obtaining his education.

[18] Although the annuity contract was not offered into evidence, presumably it is exempt property. *See* La. R.S. 13:3881(D)(1).

standard of living. Accordingly, although the debtor's family otherwise appears to have a minimal standard of living based on current household income, the evidence supports the conclusion that the debtor has not proven that he cannot afford reasonable necessary living expenses and maintain a minimal standard of living for himself and his family, if he must repay his student loans.[19]

**II.    THE DEBTOR HAS FAILED TO PROVE THE EXISTENCE OF ADDITIONAL CIRCUMSTANCES WITHIN THE MEANING OF *BRUNNER* AND *GERHARDT*.**

*Brunner* and *Gerhardt*'s second test is whether "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans."[20] "Additional circumstances" encompasses "circumstances that impacted on the debtor's future earning potential but which [were] either not present when the debtor [ ] applied for the loans or [have] since been exacerbated."[21] Proving that the debtor is "currently in financial straits" is not enough.[22] Instead, the debtor must specifically prove "a total incapacity ... in the future to pay [his] debts for reasons not within [his] control."[23] Examples of "additional circumstances" include illness, disability, a lack of usable job skills, or responsibility for a large number of dependents.[24]

---

[19] This assumes that the debtor remains eligible to participate in the William D. Ford Income Contingent Repayment Plan, discussed below.

[20] *Gerhardt*, 348 F.3d at 91; *Brunner*, 831 F.2d at 396.

[21] *Gerhardt*, 348 F.3d at 92, citing *In re Roach*, 288 B.R. 437, 445 (Bankr. E.D. La. 2003).

[22] *Gerhardt*, 348 F.3d at 92, citing *Roach*, 288 B.R. at 445.

[23] *Gerhardt*, 348 F.3d at 92, citing *Faish*, 72 F.3d at 307.

[24] *Olyer v. Educational Management Corporation (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005), citing *Kraft v. New York State Higher Educ. Serv. Corp. ( In re Kraft )*, 161 B.R. 82, 84 (Bankr. W.D. N.Y. 1993).

Newchurch argues that the Louisiana Board of Elementary and Secondary Education's refusal to issue him a teaching certificate prevents him from earning the income necessary to repay the student loans he incurred in reliance on assurances from someone working for the East Baton Rouge Parish School Board that his conviction was no bar to a teaching career. However, his insistence that he should not have to repay his student loans because he cannot teach does not relieve the debtor from his undertaking. "Nothing in the Bankruptcy Code suggests that a debtor may choose to work only in the field in which he was trained, obtain a low-paying job, and then claim that it would be undue hardship to repay his student loans."[25]

Newchurch also testified that recurring gout and advancing arthritis leave him less able to work as an arborist, thus casting doubt on his prospects for maintaining even his relatively modest income. However, the debtor offered no expert or other evidence to corroborate his claims concerning his physical condition or the likely course his ailments will take, so if his ability to continue work as an arborist were dispositive (and as set forth below, the court concludes that it is not), the plaintiff has not sustained his burden of proof of this issue.

A more fundamental weakness in the plaintiff's case is the debtor's underemployment. Newchurch holds a bachelor's degree in technology education and a master's degree in natural sciences. The debtor testified that he minored in construction management at the undergraduate level, and in graduate school took numerous

---

[25] *Gerhardt*, 348 F.3d at 93, citing *In re Grigas*, 252 B.R. 866, 875 (Bankr. D.N.H. 2000); *See also Educational Credit Management Corporation v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005) ("Having a low-paying job, however, does not itself provide [sic] undue hardship, especially where the debtor has not actively sought higher-paying employment"); *Oyler*, 397 F.3d 382 (affirming lower court's refusal to discharge the student loan debt of a married couple with three children who had annual income of $10,000 when one debtor chose to work as a modestly compensated church pastor).

mathematics courses as well as biology, chemistry and physics classes.  He was poised and articulate during his trial testimony.  Newchurch's education, experience and aptitude for science and mathematics suggest that he has marketable skills.  Despite this, the debtor admitted on cross-examination that he had not sought work other than as an arborist since before he started undergraduate school at LSU in 1992.

Although the debtor's criminal conviction may be an obstacle to obtaining some types of employment, Newchurch's contention that he cannot find any job that would pay him more than he earns now as an arborist is not credible, if only because Newchurch has never tried to find other work.[26]  His failure to seek out other employment opportunities is a circumstance within his control for purposes of the second test under *Brunner* and *Gerhardt*.  That fact supports the conclusion that the debtor has failed to prove the existence of additional circumstances within the meaning of *Brunner* and *Gerhardt*.[27]

---

[26] Newchurch may prefer self-employment, because it allows him to bring his wife and daughter with him to work every day.  Absent evidence to support a conclusion that Newchurch has good cause to keep his wife and daughter in close proximity to him during the day, the temptation is strong to conclude that the debtor prefers his current employment to more lucrative, though perhaps less flexible, working arrangements.

[27] *Compare Goulet v. Educational Credit Management Corp.*, 284 F.3d 773, 779 (7th Cir. 2002) ("intelligent" debtor with felony conviction who received "excellent education" at graduate level denied discharge of post-conviction student loan debt absent evidence that he was not employable in areas outside area of prior experience and graduate studies field); *In re Mallinckrodt*, 274 B.R. 560, 567-8 (S.D. Fl. 2002) ("healthy and intelligent" debtor who held master's degree failed to prove significant barriers to securing gainful employment allowing him to repay student loans); *In re Farrish*, 272 B.R. 456, 463 (Bankr. S.D. Miss. 2001) (debtor declining to work outside chosen profession was voluntarily underemployed, and not entitled to discharge student loans); *In re Lehman*, 226 B.R. 805 (Bankr. D. Vt. 1998) (debtor with bachelor's and master's degrees who abandoned teaching position to start pottery business denied discharge of student loans for voluntarily choosing "minimalist lifestyle" that did not pay enough to maintain minimal standard of living).

**III.     THE DEBTOR DID NOT PROVE THAT HE MADE THE GOOD FAITH EFFORTS *GERHARDT* AND *BRUNNER* REQUIRE FOR A DISCHARGE OF STUDENT LOAN DEBT.**

The final *Brunner* and *Gerhardt* prerequisite to discharging student loan debt is the debtor's showing of his "good faith efforts to repay [his] loans."[28] Bankruptcy courts examine the debtor's "efforts to obtain employment, maximize income, and minimize expenses."[29] Although actual payments have not always been considered a prerequisite for satisfaction of this aspect of *Brunner* and *Gerhardt*, some courts have considered them as evidence of a debtor's good faith.[30]

Newchurch has repaid a small fraction of his student loan debt.[31] Although these payments may suggest that the debtor made good faith efforts to repay his student loans,[32] they are relatively insignificant in comparison to the total amount of the debtor's student loan debt. More significant for assessing Newchurch's good faith is his admission that in the nearly three years since his loans went into deferment in 2003, he has not made any payments on them, nor has he discussed repayment terms with any of the student loan note holders.

---

[28]  *Frushour*, 433 F.3d at 402, citing *Brunner*, 831 F.2d at 396.

[29]  *Frushour*, 433 F.3d at 402, citing *O'Hearn v. Educational Credit Management Corporation (In re O'Hearn)*, 339 F.3d 559, 564 (7th Cir. 2003).

[30]  *Matter of Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993); *In re McGinnis*, 289 B.R. 257, 267 (Bankr. M.D. Ga. 2003). *See also In re Nary*, 253 B.R. 752, 768 (N.D. Tex. 2000), citing *In re Brown*, 239 B.R. 204, 209 (S.D. Cal. 1999) ("[A] lack of payment does not by itself preclude a good faith finding.").

[31]  Joint Exhibits 8 - 11. The record did not establish when the debtor repaid these obligations, which included three $1000 loans, and a single loan for $2000. Newchurch also claimed to have made a $6,000 payment on the student loans at some point, but offered no documentary evidence to corroborate that claim.

[32]  *Cf. In re McGinnis*, 289 B.R. 257 (Bankr. M.D. Ga. 2003) (debtor's modest payments on student loan debt were not evidence of bad faith, given debtor's medical condition and other factors beyond her control).

9

Furthermore, a debtor's effort to pursue options to make the debt less onerous is an important indicator of good faith.[33] "Although not always dispositive, it illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances."[34] Here, ECMC offered Newchurch an opportunity to participate in the William D. Ford Program,[35] whose Income Contingent Repayment Plan ("ICRP") allows eligible borrowers to make reduced student loan payments based upon factors including the borrower's adjusted gross income, the total amount of the borrower's loans and his family size.[36] Had Newchurch elected to participate in the ICRP, he would have been required to make initial monthly loan payments of $170.28 – less than the supplemental contribution he had been making to his New York Life annuity contract.[37]

The debtor testified that he did not believe he could afford to make the ICRP payment based on his income at the time of trial, though he conceded he could try. Newchurch also doubted whether he would ever be able to repay his student loans at that rate, which suggests that he did not understand that the Ford ICRP program allows eligible borrowers to make payments contingent on their income for twenty-five years, at

---

[33] *Frushour*, 433 F.3d at 402, citing *Alderete v. Educational Credit Management Corp. (In re Alderete)*, 412 F.3d 1200, 1206 (10th Cir. 2005).

[34] *Frushour*, 433 F.3d at 402, citing *Tirch v. Pennsylvania Higher Education Assistance Agency (In re Tirch)*, 409 F.3d 677, 682-83 (6th Cir. 2005) (failure to renegotiate student loan obligations is not a *per se* indication of a lack of good faith). *See also United States Dept. of Health & Human Services v. Smitley*, 347 F.3d 109 (4th Cir. 2003). (relying in part on fact that debtor was eligible for income contingent repayment plan to deny discharge under "unconscionable" standard for Health Education Assistance Loans).

[35] 34 C.F.R. § 685 *et seq*.

[36] 34 C.F.R. § 685.208(f).

[37] See May 15, 2006 letter from Paul DeBaillon to Steven E. Adams (Joint Exhibit 13), p.2.

the end of which any remaining debt is cancelled. In any case, on the record here Newchurch's failure to pursue relief from his student loan payments through the ICRP is evidence of a lack of good faith under *Brunner* and *Gerhardt*.

Finally, most bankruptcy courts weighing good faith tend to focus on a debtor's "efforts to obtain employment, maximize income and minimize expenses"[38] to enable him to make the payments. Other issues aside, the debtor's underemployment and election to increase his annuity payment support a finding and conclusion that Newchurch did not prove that he made the good faith efforts *Gerhardt* and *Brunner* require for a discharge of student loan debt.

## CONCLUSION

John Newchurch is an intelligent, healthy forty-five year old with a master's degree. Although his felony conviction has proven to be an obstacle to obtaining a certificate to teach, the debtor did not prove that he cannot find other gainful employment. He also failed to prove his good faith efforts to repay the loans.

For these reasons the debtor is not entitled to the relief he seeks, and the court will dismiss the complaint.

Baton Rouge, Louisiana, November 2, 2006.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[38] *Frushour*, 433 F.3d at 402, citing *O'Hearn v. Educational Credit Management Corporation (In re O'Hearn)*, 339 F.3d 559, 564 (7th Cir. 2003).